**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PEN NSYLVANIA**

| | | |
|---|---|---|
| JAMES MCGUFFEY, | : | |
| Plaintiff. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 05-2840 |
| BRINK'S, INC., | : | |
| Defendant. | : | |
| | : | |

| | | |
|---|---|---|
| JAMES MCGUFFEY, | : | |
| Plaintiff. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2299 |
| BRINK'S, INC. | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

February _9ᵗʰ , 2009                                                        **Anita B. Brody, J.**

**I. INTRODUCTION**

Plaintiff James McGuffey ("McGuffey") filed two lawsuits against Brink's, Inc.,

("Brink's") for age discrimination and retaliation.  The cases were consolidated and went to trial.

On June 19, 2008, I entered judgment for McGuffey (Doc. #189 in 05-2840; Doc. #73 in 07-

2299).  He then filed a motion to amend the judgment under Fed. R. Civ. Pro. 59(e) (Doc. #203

in 05-2840; Doc. ##83, 84, and 85 in 07-2299) and a petition for attorney's fees and costs of

litigation under 29 U.S.C. §§ 216(b), 626(b) (Doc. #200 in 05-2840; Doc. #79 in 07-2299).  For

1

the reasons stated below, I will deny McGuffey's motion to amend the judgment but grant his

petition for attorney's fees and costs.

## II. BACKGROUND

Brink's provides armored car transportation and other services related to security.

McGuffey worked for Brink's for 22 years, eventually becoming the Northeast Regional Vice-

President ("Northeast RVP").  On October 20, 2003, Brink's closed the Northeast Region and

discharged McGuffey, who was then 52.  On January 12, 2004, McGuffey filed a grievance with

the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination based

on Brink's discharging him.  On June 14, 2005, McGuffey brought a lawsuit against Brink's and

The Brinks Company Pension Retirement Plan ("Plan") in this Court under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; the Pennsylvania

Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951 et seq.; the Pennsylvania Wage

Payment and Collection Act ("WPCA"), 43 Pa. Stat. Ann. 260 et seq.; and the Employee

Retirement Income Security Act ("ERISA"), 26 U.S.C. §§ 4972-75, 29 U.S.C. §§ 401-15.  The

case was docketed Civil Action 05-2840 ("2005 case").

In May 2006, Brink's re-opened the Northeast Region.  Although McGuffey had

expressed an interest in being re-hired, Brink's instead hired Darrell Quinn as Northeast RVP.  In

response, McGuffey filed a second grievance with the EEOC, alleging age discrimination and

retaliation for his 2005 case and prior EEOC grievance based on Brink's not re-hiring him.  In

September 2007, McGuffey submitted a job application for the position of Southeast Regional

Vice-President ("Southeast RVP"), but Brink's declined to hire him.  On December 12, 2007,

2

McGuffey filed a third grievance with the EEOC based on Brink's not hiring him as Southeast RVP.  On June 6, 2007, McGuffey brought the second lawsuit against Brink's in this Court under the ADEA and PHRA.  The case was docketed Civil Action 07-2299 ("2007 case").

On January 11, 2008, I dismissed the Plan and McGuffey's claim under ERISA (Doc. #111 in 05-2840).  The 2005 and 2007 cases were then consolidated.  On May 14, 2008, I granted summary judgment as to McGuffey's claims for discrimination and retaliation relating to the Southeast RVP position (Doc. #132 in 05-2840; Doc. #47 in 07-2299).  On May 29, 2008, I dismissed his claim under the WPCL (Doc. #165 in 05-2840; Doc #59 in 07-2299).  McGuffey then proceeded to trial on his claims for discrimination and retaliation related to the Northeast RVP position.  On June 17, 2008, the jury returned a verdict awarding McGuffey $170,000.  Brink's was found liable for retaliation but not for discrimination.  On June 19, 2008, I entered judgment for McGuffey (Doc. #189 in 05-2840; Doc. #73 in 07-2299).

Carmen R. Matos ("Matos") has represented McGuffey since his first grievance with the EEOC.  In April 2008, George P. Wood ("Wood") joined this representation to assist Matos with the trial beginning on May 30, 2008.  Throughout this litigation, Brink's was represented by James Kellett ("Kellett") and Alexander Granovsky of Crowell & Moring, LLP.[1]

## IV. DISCUSSION

Before me are McGuffey's motion to amend the judgment under Fed. R. Civ. Pro. 59(e) (Doc. #203 in 05-2840; Doc. ##83, 84, and 85 in 07-2299) and his petition for attorney's fees and

---

[1] W. Bourne Ruthrauff of Bennett, Bricklin & Saltzburg, LLP, was local counsel for Brink's.

costs of litigation under 29 U.S.C. §§ 216(b), 626(b) (Doc. #200 in 05-2840; Doc. #79 in 07-2299).  I discuss each motion in turn below.

## A.  Motion to Amend Verdict

McGuffey filed a motion captioned "Motion to Mold the Verdict, Pursuant to Fed.R.Civ.P. 59(e)" (Doc. #203 in 05-2840; Doc. ##83, 84, and 85 in 07-2299).  He later moved to amend this motion to be filed also under Fed. R. Civ. Pro. 52, 52(b), 58(a)(2) "or any other rule the Court finds controlling to avoid manifest injustice."  (Doc. #222 in 05-2840; Doc. #96 in 07-2299).  I must consider the substance of what McGuffey requests to determine the applicable rule.  See U.S. v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003) ("[T]he function of the motion, and not the caption, dictates which Rule is applicable.").  McGuffey requests that I amend my judgment of June 19, 2008, to award McGuffey the equitable relief of reinstatement to his former position as Northeast RVP and to order Brink's to publicize my amended judgment.  These requests go to the merits of my judgment because they concern what relief McGuffey deserves because of the ADEA violation.  Therefore, I must analyze McGuffey's motion under Fed. R. Civ. Pro. 59(e).[2]  See Buchanan v. Stanships, Inc., 485 U.S. 265, 267 (1988) ("The federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits.").

---

[2] Rules 52(b) and 58(a)(2) are clearly inapplicable.  Rule 52(b) concerns judicial findings of fact, whereas McGuffey's requests relate to decisions of law.  Rule 58(a)(2) merely refers back to Rule 52(b).

Rule 59(e) provides for "[a] motion to alter or amend a judgment."[3]  Fed. R. Civ. Pro. 59(e).  It "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 2617 n.5 (2008) (quoting 11C Charles Wright & Arthur Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).  "A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."  North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).  McGuffey does not suggest that the first or second ground applies, but his motion may be read to allege the third ground.

"Congress intended victims of age discrimination to be made whole by restoring them to the position they would have been in had the discrimination never occurred."  Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir.1985).  The remedies of reinstatement and front pay (i.e., future earnings) are both designed to accomplish this purpose.  Id.  Accordingly, they are alternative remedies.  In other words, an ADEA plaintiff "is not entitled to both reinstatement and front pay."  Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 1995).  Although reinstatement is "the preferred remedy to avoid future lost earnings," it "may not be feasible in all cases."  Maxfield, 766 F.2d at 796.  Thus, the district court may choose between granting reinstatement and instructing the jury on front pay.  See Starceski, 54 F.3d at 1103

---

[3] Rule 59(e) states that the motion "must be filed no later than 10 days after the entry of the judgment."  Fed. R. Civ. Pro. 59(e).  McGuffey filed his motion on July 2, 2008, nine days after I entered the judgment (excluding Saturdays and Sundays pursuant to Fed. R. Civ. Pro. 6).

(noting that whether to grant reinstatement "is within the sound discretion of the district court");
Maxfield, 766 F.2d at 796 (noting that "the amount of damages available as front pay is a jury
question.").

McGuffey's motion does not allege that he ever moved for reinstatement before the final
judgment was entered or objected to my instructing the jury on front pay.  Indeed, he even
requested an instruction and interrogatory on front pay.  (Pl.'s Proposed Points for Charge 43;
Pl.'s Am. Proposed Interrogs. to the Jury 2.)  By seeking this relief prior to trial, McGuffey in
effect waived his right to reinstatement.  He cannot now argue that my decision to instruct the
jury on front pay rather than to grant reinstatement was incorrect or unjust.  Cf. Starceski, 54 F.3d
at 1103 (noting that a petitioner seeking reinstatement "failed to object when the trial judge
instructed the jury on front pay, even though he intended to make a motion for reinstatement").
Therefore, with regard to whether McGuffey should have been reinstated, I find no "need to
correct clear error of law or prevent manifest injustice."  North River Ins. Co., 52 F.3d at 1218.

With regard to ordering Brink's to publicize my judgment, McGuffey cites no law
supporting this request other than Rodriguez v. Taylor, 569 F.2d 1231 (3d Cir. 1977).  Rodriguez
was a class action lawsuit alleging age discrimination because of an eligibility requirement to
take Philadelphia's civil service exam.  Id. at 1234-35.  Following a bench trial, the district court
found discrimination in violation of the ADEA and ordered "certain corrective measures
designed to publicize his order and to encourage middle-aged persons to sit for a new
examination to be held to fill subsequent vacancies."  Id. at 1235 n.4.  In the instant case,
however, corrective measures are not necessary to counteract the ADEA violation found at trial.

For the reasons stated above and because McGuffey raises arguments that could have been raised before I entered my judgment, I will deny McGuffey's motion to amend the judgment (Doc. #203 in 05-2840; Doc. ##83, 84, and 85 in 07-2299).

## B.  Motion for Attorney's Fees and Costs

McGuffey also filed a petition for attorney's fees and costs of litigation (Doc. #200 in 05-2840; Doc. #79 in 07-2299).  The ADEA incorporates the fee-shifting provision of the Equal Pay Act, 29 U.S.C. §§ 206 et seq., providing: "The court in such action shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  See 29 U.S.C. § 626(b) (referencing § 216(b)).

A district court has discretion in calculating an award of attorney's fees under § 216(b). See Pub. Interest Research Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1184 (3d Cir. 1995) ("The amount of a fee award … is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous.")  In exercising this discretion, "the district court must provide a concise but clear explanation of its reasons for a fee award."  Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist., 152 F.3d 228, 232 (3d Cir. 1998) (internal quotations omitted).

Analysis of an attorney's fees petition under § 216(b) has three steps.  See Hensley v. Eckerhart, 461 U.S. 424 (1983) (setting forth fee-shifting analysis); Blum v. Witco Chem. Corp., 829 F.2d 367 (3d Cir. 1987) (applying Hensley to § 216(b)).  First, only a prevailing party may be awarded attorney's fees.  Hensley, 461 U.S. at 433.  Second, in "determining the amount of a reasonable fee," the court should calculate "the number of hours reasonably expended on the

7

litigation multiplied by a reasonable hourly rate." Id.  This calculation produces a number called the "lodestar" that "is presumed to be the reasonable fee." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).  Third, "other considerations … may lead the district court to adjust the fee upward or downward." Hensley, 461 U.S. at 434.  Because the lodestar is presumptively reasonable, "[t]he party seeking adjustment has the burden of proving that an adjustment is necessary." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

### 1. Prevailing Party

First, "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (internal quotations omitted).  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989).  Here, a jury found Brink's liable for retaliation and awarded compensatory damages of $170,000.  Thus, McGuffey clearly is a prevailing party.

### 2. Calculation of Lodestar

Next, I must calculate the lodestar by determining "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." Hensley, 461 U.S. at 433.  See also Blum v. Stenson, 465 U.S. 886, 897 (1984) ("When … the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting

8

product is presumed to be the reasonable fee.").  McGuffey asserts that Matos worked 866 hours at $400 per hour and that Wood worked 230.3 hours at $400 per hour.  Brink's argues that these amounts are unreasonable.

### a. Reasonable Hourly Rate

"Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."  Rode, 892 F.2d at 1183.  Thus, the district court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Rode, 892 F.2d at 1183.  "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.

Matos has practiced law since 1981.  (Pl.'s Pet. for Att'y Fees and Costs Ex. 2 [hereinafter "Pl.'s Pet."].)  From 1981 to 1995, she was a trial attorney and supervisor at the EEOC, receiving numerous awards for her performance.  Id.  Since 1995, she has built a private practice focused on employment law.  Id.  Matos has numerous publications on employment law and has given many speeches and seminars on employment law issues.  Id.  Furthermore, she has been an active member in professional organizations related to employment law and has litigated numerous employment discrimination cases in federal court.  Id.  Matos thus has much skill and experience litigating employment law cases.

Wood has practiced law with the firm Stewart & Wood since 1974.  (Pl.'s Pet. Ex. 5.)  He has litigated numerous employment discrimination cases in state and federal court.  Id.  Wood also taught labor law at Delaware Law School.  Id.  He worked alongside Matos in trying numerous cases and demonstrated excellent ability.  (Pl.'s Pet. Ex. 2.)  Wood thus also has much skill and experience litigating employment law cases.

McGuffey has submitted affidavits of Alice Ballard, Andrew Erba, Anita Alberts, and Alan Epstein, all of whom are attorneys practicing employment law in and around Philadelphia.  (Pl.'s Pet. Exs. 7-8.)  All four attorneys are familiar with the local market for employment rights litigation and with the work of Matos and Wood.  Id.  They indicate that in a matter such as this the prevailing market rate for an attorney with the skill and experience of Matos or Wood is $400 per hour.  Id.

Brink's asserts that the rate should be $300 per hour and points to the fee schedule established by Community Legal Services of Philadelphia ("CLS").  Cf. Maldonado v. Houstoun, 256 F.3d 181, 187-88 (3d Cir. 2001) (allowing the use of CLS's fee schedule to determine a reasonable rate when "the parties offer very little evidence pertaining thereto").  However, that fee schedule was last updated in April 2006 and indicates that an attorney "with more than 25 year's experience" should receive "$324-410" per hour.  Community Legal Services of Philadelphia, About CLS / Attorney Fees, http://www.clsphila.org/Content.aspx?id=206 (last visited Jan. 29, 2009).  For these reasons, I find CLS's fee schedule not only less relevant than the affidavits submitted by McGuffey but also consistent with them.  See Lanni, 259 F.3d at 149 ("When attorney's fees are awarded, the current market rate must be used. … The current market rate is the rate at the time of the fee petition, not the rate at the time the services were

performed.").  Therefore, I find that $400 is a reasonable hourly rate for the services of Matos or

Wood.  See Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir.

1996) ("Where … the plaintiff has met his prima facie burden under the 'community market rate'

lodestar test, and the opposing party has not produced contradictory evidence, the district court

may not exercise its discretion to adjust the requested rate downward.").


       *b.  Number of Hours Reasonably Expended*

      "In calculating the second part of the lodestar determination, the time reasonably

expended," the district court should "review the time charged, decide whether the hours set out

were reasonably expended for each of the particular purposes described and then exclude those

that are excessive, redundant, or otherwise unnecessary."  Pa. Envtl. Def. Found., 152 F.3d at 232

(internal quotations omitted).  "Where the documentation of hours is inadequate," moreover, "the

district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.

      Since her initial consultation with McGuffey on November 3, 2003, Matos alleges to have

worked 866 hours on the 2005 and 2007 cases together.  Since his entry of appearance on April

11, 2008, Wood alleges to have worked 230.3 hours on the matter.  Both attorneys submitted

documentation of these hours.  (Pl.'s Exs. 3 and 6.)  Brink's contests these alleged hours on three

grounds, namely, that hours billed for the 2005 case should be ignored, that the documentation is

inadequate, and that the hours billed are excessive.

i. Scope of Litigation

Brink's asserts that the 2005 and 2007 cases were separate actions.  It then argues that because the only claim on which McGuffey prevailed was asserted in the 2007 case, Matos's hours working on the 2005 case should be ignored.  The two cases, however, were not separate because I consolidated them for purposes of discovery and trial (Doc. #112 in 05-2840; Doc. #15 in 07-2299).  Because they were combined into one when presented to the jury and finally resolved on the merits, it is most reasonable to view the 2005 and 2007 cases as one action for purposes of attorney's fees.

Moreover, Hensley provides that a district court should not consider lack of success until after the lodestar has been calculated.  Hensley, 461 U.S. at 434.  Based on that chronology, the Supreme Court created a detailed analytical framework for determining whether and how much to reduce the lodestar for lack of success.  Id. at 434-37.  Granting the request of Brink's to ignore Matos's work on the 2005 case would circumvent that entire framework.  Thus, I find that the 2005 and 2007 cases should be viewed as one action for purposes of attorney's fees.


ii. Documentation

Brink's also argues that Matos's and Wood's hours should be reduced for inadequate documentation.  A fee petition must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."  Washington, 89 F.3d at 1037 (internal quotations omitted).  Specifically, it "should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners,

12

associates." Id. at 1037-38 (internal quotations omitted).  However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  Id. at 1038 (internal quotations omitted).  For example, a fee petition with the phrase "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours" contains adequate specificity. Rode, 892 F.2d at 1191 n.13.

Brink's asserts that 18.8 hours should be excluded because the corresponding documentation states only "Research," "Review research," "Research ADEA," or "Research ERISA" without identifying particular claims involved.  (See Def. Brink's, Inc.'s Mem. of Law in Opp'n to Pl.'s Pet. for Att'y Fees and Costs Ex. K [hereinafter "Def.'s Opp'n"].)  Brink's further complains that other documentation also fails to specify the claims on which Matos and Wood worked during each hour billed.  For purposes of determining a fee award, however, this matter "cannot be viewed as a series of discrete claims."  Hensley, 461 U.S. at 435 (noting that where "claims for relief … involve a common core of facts" or are "based on related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis").  Furthermore, although Matos's and Wood's documentation of hours "could have benefited from added specificity, the detail they provided allowed [this] Court to determine whether the costs claimed were unreasonable for the work performed."  United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 291 (3d Cir. 2007)  Therefore, I find the documentation of hours adequate and decline to reduce the fee award on this ground.

iii. Excessive Hours

Brink's also argues that many of Matos's and Wood's hours are "excessive, redundant, or otherwise unnecessary." Pa. Envtl. Def. Found., 152 F.3d at 232.  First, Brink's asserts that 7.3 hours should be excluded because Matos billed for time spent waiting for the jury to deliberate. (See Def.'s Opp'n Ex. N.)  However, Matos had to remain available during deliberations to confer on questions raised by the jury.  Thus, these hours should not be excluded.

Second, Brink's complains that Matos billed for "recycled work" because her fee petition contains language that was copied from her fee petition in another case.  (See Def.'s Opp'n Ex. L.)  However, Matos only billed 7.4 hours for writing the fee petition.  (See Pl.'s Pet. Ex. 3.) Given the amount of original work needed to write the petition, billing 7.4 hours is reasonable. Matos evidently did not bill for any "recycled work."

Third, Brink's argues that 16.8 hours should be excluded because Matos and Wood billed for time spent working on clerical tasks.  (See Def.'s Opp'n Ex. P.)  These tasks include reviewing electronic filings in the case and preparing subpoenas, notices of deposition, and letters.  Most of these tasks are not "clerical," however, and all are necessary to the litigation. Matos and Wood should thus be compensated.  See Richerson v. Jones, 506 F.Supp. 1259, 1264 (E.D. Pa. 1981) (awarding fees for "time claimed relate[d] to preparation for argument, motions, and letters, and review of files, briefs, and letters" because "[t]hese are tasks which must be accomplished to prepare for court proceedings and to control litigation").

Fourth, Brink's argues that the 10.2 hours billed for attending the depositions of James Burnham, Jeffrey Herbert, and Shelliene Crandall should be reduced because the attendance of both Matos and Wood was unnecessary.  Because these depositions occurred while the trial was

14

ongoing, however, both Matos and Wood needed to attend them to know what transpired. Therefore, these hours are reasonable.

Fifth, Brink's argues that Wood's presence at the trial was unnecessary. Given the complexity of the litigation, however, using two attorneys at the trial was reasonable. Also, Matos and Wood tried the case without assistance from paralegals or associates. See O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir. 2001) (affirming a decision "that the use of two attorneys at trial was reasonable in light of the complexity of the litigation and the experience of the [defendant's] attorney"); Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (finding it "within the purview of the court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable").

Finally, Brink's argues that Matos was inefficient. Specifically, it asserts that "[t]his matter … was made significantly more onerous and prolonged than was reasonably necessary due to the manner in which Ms. Matos litigated the case." (Def.'s Opp'n 19.) However, Kellett bears greater responsibility for the litigation being onerous and prolonged. He was obstructive, antagonistic, and generally uncooperative from beginning to end. Because Kellett's behavior created a hostile environment that made Matos's job unnecessarily difficult, I find that the manner in which Matos litigated her case was reasonable.

Apart from the hours to which Brink's objected, I have reviewed Matos's and Wood's billing records line-by-line and find their hours reasonable. See Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001) ("[I]t is necessary that the Court go line, by line, by line through the billing records supporting the fee request."). Specifically, I find that Matos reasonably expended 866 hours on this matter and that Wood reasonably expended 230.3 hours

15

on this matter.  Because I found their hourly rate of $400 reasonable, I calculate the lodestar to be $438,520 in total ($346,400 for Matos and $92,120 for Wood).

### 3. Adjustment to the Lodestar

Finally, I must determine whether other considerations warrant an upward or downward adjustment to the lodestar.  In particular, the Supreme Court has stressed "the important factor of the results obtained." Hensley, 461 U.S. at 434 (internal quotations omitted).  "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."  Id.  An adjustment for limited success "should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." Rode, 892 F.2d at 1183.

In this matter, McGuffey asserted one claim against the Plan under ERISA and six claims against Brink's.[4]  The following were McGuffey's claims against Brink's:

1.  Violation of the ADEA and PHRA in that Brink's discriminated against McGuffey in terminating him ("Claim One");

2.  Violation of the WPCA in that Brink's wrongly terminated McGuffey ("Claim Two");

3.  Violation of the ADEA and PHRA in that Brink's discriminated against McGuffey in not re-hiring him as Northeast RVP ("Claim Three");

4.  Violation of the ADEA and PHRA in that Brink's retaliated against McGuffey in not re-hiring him as Northeast RVP ("Claim Four");

---

[4] I have grouped claims under the ADEA and PHRA together into one because they are essentially identical.

5.      Violation of the ADEA and PHRA in that Brink's discriminated against
        McGuffey in not re-hiring him as Southeast RVP ("Claim Five"); and

6.      Violation of the ADEA and PHRA in that Brink's retaliated against
        McGuffey in not re-hiring him as Southeast RVP ("Claim Six");

On motions for summary judgment, I dismissed the claim against the Plan as well as Claims

Two, Five, and Six.  After the remaining claims went to the jury, Brink's was found liable only

on Claim Four.  McGuffey thus did not succeed on every claim.

     Where a plaintiff who has been deemed a prevailing party did not succeed on every claim,

two questions must be answered: "First, did the plaintiff fail to prevail on claims that were

unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of

success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

Hensley, 461 U.S. at 434.


     *a. Interrelation of Claims*

     With regard to the first question, the Supreme Court identified two alternative situations.

On one hand, where a plaintiff asserts "distinctly different claims for relief that are based on

different facts and legal theories," whereby "counsel's work on one claim [is] unrelated to his

work on another claim," hours billed for "work on an unsuccessful claim cannot be deemed to

have been expended in pursuit of the ultimate result achieved."  Id. at 435 (internal quotations

omitted).  Thus, no fee should be awarded for work on such a claim.  Id.  On the other hand,

where a "plaintiff's claims for relief … involve a common core of facts or [are] based on related

legal theories," the "lawsuit cannot be viewed as a series of discrete claims."  Id.  In this

situation, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Id.

I find that Claims One, Three, Five, and Six were closely related to Claim Four.  For one thing, they all involved similar legal theories under the ADEA and PHRA.  The hours expended researching those laws and arguing those theories normally were devoted generally to all ADEA and PHRA claims.  See id. at 435 (noting that where a plaintiff asserts related claims "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis").  Furthermore, these claims all involved a common core of facts.  One arose from Brink's terminating McGuffey, two arose from Brink's not re-hiring him as Northeast RVP, and two arose from Brink's not re-hiring him as Southeast RVP.  They involved a common core of facts because Brink's offered the same explanation for all three events, as it has conceded:

> THE COURT: As I understand it from the defense, there is a concession that he [McGuffey] didn't get the second job, because—the same reasons, he didn't get the first job, is that correct?
> MR. KELLETT: And the—for the same reason he was fired.
> THE COURT: The same reason he was fired.  Okay?  …
> MR. KELLETT: That's correct.

(Conf. Tr. 4, Jan. 11, 2008.)  The great majority of Matos and Wood's work on the ADEA and PHRA claims was devoted to discrediting this single explanation of Brink's.  Thus, that Matos began this work before the Prevailing Claim arose does not matter.  Indeed, her work on Claim One before Claim Four arose also contributed to McGuffey's ultimate success by giving rise to Claim Four.

By contrast, I find that Claim Two and McGuffey's claim against the Plan were less related to Claim Four. Although they involved the same common core of facts, their legal theories were entirely different from that in Claim Four. These two claims involved the WPCA and ERISA, respectively, and had no connection to the ADEA or PHRA. Therefore, no fee should be awarded for legal research and writing on the WPCA or ERISA.

Upon reviewing Matos and Wood's billing records, I find that Matos billed about two hours for legal research related to the WPCA or ERISA. With regard to writing, the 2005 Complaint contains about 300 words related to the WPCA or ERISA. (See Comp'l. ¶¶ 83-86, 91-95.) McGuffey submitted a ten-page response to the Plan's motion for summary judgment (Doc. #91 in 2840). Finally, his almost 100-page response to the summary judgment motions of Brink's (Doc. #90 in 2840) contains only two paragraphs relating to the WPCA. Overall, I find that Matos billed about 15 hours for legal research and writing on the WPCA or ERISA. Upon reducing Matos's billed hours from 866 to 851, the lodestar becomes $432,520 in total ($340,400 for Matos and $92,120 for Wood).

### b. Level of Success

With regard to the second question, comparing relief obtained to hours expended, the Supreme Court again identified two situations. On one hand, "where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. In this situation, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach

certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. On

the other hand, where "a plaintiff has achieved only partial or limited success, the product of

hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

excessive amount." Id. at 436. In such a situation, the lodestar should be reduced.

I find that McGuffey's success was incomplete because Brink's was not found liable for

age discrimination, an important component of this matter. On the other hand, the $170,000

award was itself an excellent outcome for McGuffey. Therefore, I will compensate for this

limited success with a ten-percent reduction to the lodestar. See id. at 436-37 ("The district court

may attempt to identify specific hours that should be eliminated, or it may simply reduce the

award to account for the limited success."). Accordingly, the lodestar becomes $389,268 in total

($306,360 for Matos and $82,908 for Wood).


### c. Hostility of Defense Counsel

Unfortunately, I cannot find law authorizing an increase to the lodestar based on a defense

counsel's hostility or other unprofessional behavior. This case cries out for one. Kellett was

antagonistic and obstructive toward Matos and Wood throughout this litigation.[5] Hours of time

were wasted in asserting and combatting this hostility. I am not adjusting the lodestar upward to

compensate for Kellett's behavior only because the law does not authorize such an adjustment.

---

[5] For example, Kellett stated to Matos: "You don't know what you're doing" and "Tell
McGuffey, this is war!" (Pl.'s Reply Brief to Def.'s Opp'n to Pl.'s Fee Pet. Ex. 18 [hereinafter
"Pl.'s Reply"].) Kellett apologized for other behavior during the trial, moreover, and I
responded: "I know you don't mean to be disrespectful but you are sometimes." (Trial Tr. vol. 1,
53, May 30, 2008.)

### 4. Costs of Litigation

McGuffey also seeks $30,030.22 in "costs of the action" ($21,228.17 for Matos, $513.90 for Wood, and $8,288.15 for McGuffey).[6]  29 U.S.C. § 216(b).  Costs of litigation must be reasonable and appropriate.  See Gen. Instrument Corp. of Del. v. Nu-Tek Elec. & Mfg., Inc., 197 F.3d 83, 92 n.6 (3d Cir. 1999) (affirming awarding costs where a party submitted "records of its costs" that are "reasonable and appropriate").  McGuffey submitted itemized records of costs incurred by Matos, Wood, and McGuffey.[7]  (Pl.'s Ex. 4, 6, 9B.)  They attested to the records' accuracy.  (Pl.'s Exs. 2, 5, 9A.)  Brink's raises several objections to the petition.

First, Brink's complains that McGuffey did not provide receipts or invoices to substantiate his costs.  The ADEA does not require receipts or invoices, however, but merely requires itemized records of costs.  See Gen. Instrument Corp. of Del., 197 F.3d at 92 n.6; Pozzi v. Smith, 952 F.Supp. 218, 227 (E.D. Pa. 1997) (awarding costs of litigation for "itemized expenses [that] are adequately documented and reasonable").

Second, Brink's complains that McGuffey does not allocate LexisNexis® charges among his seven claims.  His petition seeks $1,018.74 for costs incurred using the electronic database. For reasons stated above, I find that Claims One and Three to Six involved such similar legal

---

[6] McGuffey's reply brief contains a request for another $1,515.80 in costs of litigation.  (Pl.'s Reply 41-42.)  However, McGuffey never obtained permission from Brink's or the court to amend his fee petition.  See Fed. R. Civ. Pro. 15.  Because the petition thus was never amended, I will disregard the request for additional costs.

[7] McGuffey's petition seeks separate awards of costs for himself and each attorney.  He thus submitted three different records of costs incurred.  (See Pl.'s Ex. 4, 6, 9B.)  Brink's has raised no objection to thus allocating the costs.

theories that LexisNexis® charges cannot reasonably be allocated among them.  With regard to the other two claims (rarely mentioned during the litigation), I will reduce the $1,018.74 amount by five percent ($50.92) to account for charges incurred researching the WCPA or ERISA. Because the WCPA and ERISA claims were dismissed before Wood entered his appearance, I will allocate this reduction only to Matos's costs.

Third, Brink's complains that McGuffey seeks reimbursement for overhead expenses that are not recoverable.  (See Def. Brink's, Inc.'s Surreply in Further Opp'n to Pl.'s Pet. for Att'y Fees Ex. D.)  Courts normally decline to award costs for overhead expenses because they are subsumed into an attorney's hourly rate.  See Becker v. ARCO Chem. Co., 15 F.Supp.2d 621, 636 (E.D. Pa. 1998) (denying costs for office supplies); Planned Parenthood of Southeastern Pa. v. Casey, 869 F.Supp. 1190, 1201 (E.D. Pa. 1994) (denying costs for word processing charges). Therefore, I will reduce the amount of Matos's costs by $1,038.60 to account for her costs incurred buying office supplies.

Finally, Brink's complains that McGuffey submits costs for both gasoline and mileage, which are redundant, and that he charges for milage at an incorrect rate.  His records of costs for travel in 2006 show that McGuffey incorrectly used the mileage rate of about $0.49 established by the Internal Revenue Service ("IRS") for travel in 2005.  See I.R.S. News Rel. 2005-99, available at 2005 WL 2174638.  He should have used the rate of about $0.45 established for travel in 2006.  See I.R.S. News Rel. 2005-138, available at 2005 WL 3257510.  Furthermore, McGuffey should not have also submitted costs for gasoline because the IRS's mileage rate subsumes that expense.  Steward v. Sears Roebuck & Co., 02-8921, 2008 WL 1899995, at *6

(E.D. Pa. April 29, 2008).  Because the travel expenses at issue were incurred before Wood joined the representation, I will reduce the amount of Matos's costs by $419.62.

For the reasons stated above, I will reduce McGuffey's costs by $1,509.14.  Therefore, I will award $28,521.08 in costs of litigation ($19,719.03 for Matos, $513.90 for Wood, and $8,288.15 for McGuffey).


## V. CONCLUSION

For the reasons stated above, I will deny McGuffey's motion to amend the judgment (Doc. #203 in 05-2840; Doc. ##83, 84, and 85 in 07-2299) and his motion to amend that motion (Doc. #222 in 05-2840; Doc. #96 in 07-2299).  However, I will grant McGuffey's petition for attorney's fees and costs of litigation (Doc. #200 in 05-2840; Doc. #79 in 07-2299).  Pursuant to 29 U.S.C. §§ 216(b), 626(b), I will award $389,268 in attorney's fees ($306,360 for Matos and $82,908 for Wood) and $28,521.08 in costs of litigation ($19,719.03 for Matos, $513.90 for Wood, and $8,288.15 for McGuffey).  Also, I will award post-judgment interest at 2.51 percent pursuant to 28 U.S.C. § 1961.[8]

---

[8] Both sides agree that McGuffey should be awarded post-judgment interest at 2.51% pursuant to 28 U.S.C. § 1961.  His petition also seeks pre-judgment interest but cites no law to support this request.  Thus, I will not award pre-judgment interest.

## ORDER

**AND NOW**, this 9th _ day of February, 2009, it is **ORDERED** that:

- Plaintiff James McGuffey's Motion to Mold the Verdict, Pursuant to Fed. R. Civ. P. 59(e), Ordering the Rehire of Mr. McGuffey (Doc. #203 in 05-2840; Doc. ##83, 84, and 85 in 07-2299) is **DENIED**;

- Plaintiff James McGuffey's Motion for Leave to Amend his Motion for Reinstatement to be Filed Pursuant to Fed. R. Civ. P. 52, 52(b), 58(a)(2) and (d) and 59(e) (Doc. #222 in 05-2840; Doc. #96 in 07-2299) is **DENIED**; and

- Plaintiff James McGuffey's Petition for Attorney Fees and Costs (Doc. #200 in 05-2840; Doc. #79 in 07-2299) is **GRANTED**.  Brink's shall pay:

  - $306,360 in attorney's fees to Carmen Matos;

  - $82,908 in attorney's fees to George Wood;

  - $19,719.03 in costs of litigation to Carmen Matos;

  - $513.90 in costs of litigation to George Wood;

  - $8,288.15 in costs of litigation to James McGuffey; and

  - Post-judgment interest at 2.51% annually.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

O:\ABB 2009\L - Z\McGuffey v. Brinks, Inc. -- Order on Attorney's Fees, Mot. to Mold.wpd

24